UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TERIONA S. o/b/o Q.Q.T.,

                Plaintiff,

-v-

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____

1:20-CV-01748-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 11)

Plaintiff Teriona S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on behalf of her child, Q.Q.T., seeking judicial review of the final decision of the Commissioner of Social Security denying Q.Q.T. Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 7) is granted, the Commissioner's motion (Dkt. No. 9) is denied, and the case is remanded to the Commissioner for further proceedings.

## BACKGROUND[1]

On February 12, 2018, plaintiff Teriona S. filed an SSI application on behalf of her child, Q.Q.T., alleging that Q.Q.T. has been disabled since January 30, 2017 due to

---

[1] The Court assumes the parties' familiarity with Q.Q.T.'s medical records and educational history, which are summarized in the moving papers. The Court has reviewed the medical and school records, but cites only those portions that are relevant to the instant decision.

attention deficit hyperactivity disorder.[2] (Tr. 15, 138-43) Born on December 14, 2011, Q.Q.T. was a younger individual, seven years old and in third grade, at the time of the disability hearing. (Tr. 16, 138) The application was initially denied on May 2, 2018, and plaintiff timely requested a hearing before an administrative law judge. (Tr. 15, 63-77) On December 6, 2019, plaintiff and Q.Q.T. appeared before Administrative Law Judge ("ALJ") Ellen Parker Bush for a video hearing. (Tr. 15, 28-50) Plaintiff and Q.Q.T. were represented by an attorney. (*Id.*) On February 12, 2020, ALJ Bush issued a decision denying Q.Q.T.'s SSI claim. (Tr. 12-27) The Appeals Council denied plaintiff's request for review on October 2, 2020. (Tr. 1-6) This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. § 405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

---

[2] References to "Tr," are to the administrative record in this case.

2

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. *Id.* If

3

not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* § 416.924(d).

    III.    <u>*The ALJ's Decision*</u>

The ALJ first noted that Q.Q.T. was born on December 14, 2011, and therefore was a school-age child on the date of application as well as on the dates of the hearing

4

and disability determination. (Tr. 16) The ALJ followed the three-step process for evaluating Q.Q.T.'s SSI claim. At the first step, ALJ Bush found that Q.Q.T. has not engaged in substantial gainful activity since the application date of February 12, 2018. (*Id.*) At the second step, the ALJ determined that Q.Q.T. has the severe impairments of attention deficit hyperactivity disorder (ADHD); oppositional defiant disorder (mild in severity); and developmental language delay.[3] (*Id.*) At the third step, ALJ Bush found that Q.Q.T. does not have an impairment or combination of impairments that meets or medically equals the severity of the listings. (Tr. 16-17) ALJ Bush then concluded that Q.Q.T. does not have an impairment or combination of impairments that functionally equals the severity of the listings, because he does not have an impairment or combination of impairments that result in either marked limitation in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 17-24) Specifically, the ALJ determined that Q.Q.T.'s impairments cause less than a marked limitation in acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself. (*Id.*) The ALJ also found that Q.Q.T. has no limitation in moving about and manipulating objects; and health and physical well-being. (*Id.*) As a result, ALJ Bush determined that Q.Q.T. has not been disabled within the meaning of the Act since the application date of February 12, 2018. (Tr. 24)

---

[3] ALJ Bush noted that Q.Q.T. has a history of febrile seizures but that there was no indication in the medical records that this condition caused more than minimal functional limitations at any time relevant to the application for benefits. (Tr. 16) Therefore, the ALJ concluded that the condition was non-severe. (*Id.*)

5

IV.     *Plaintiff's Challenge*

Plaintiff argues that the ALJ's assessment of the domain of caring for yourself was not supported by substantial evidence. (*See* Dkt. No. 7-1 (Plaintiff's Memo. of Law)) For the following reasons, the Court agrees, and finds that remand is necessary on this basis.

In evaluating the domain of caring for yourself, the Commissioner is to consider how well a child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways. *See* 20 C.F.R. § 416.926a(k). The Commissioner should consider how the child copes with stress and changes in his environment, as well as how effectively a child can regulate himself; respond to changes in emotions; and cooperate with others in taking care of personal needs. *See* 20 C.F.R. § 416.926a(k); *Agee v. Astrue*, 12-CV-0657, 2013 U.S. Dist. LEXIS 172350 (W.D.N.Y. Dec. 6, 2013). This domain requires children to effectively understand their emotional needs. *Id*. To effectively meet emotional needs, a child must employ effective age-appropriate coping strategies. *Id*. They must also identify and regulate feelings, thoughts, urges, and intentions. *Id*. Importantly, school-age children should begin to develop an understanding of what is right and wrong, and what is acceptable and unacceptable behavior. *See* 20 C.F.R. § 416.926a(k)(2)(iv). School-age children should further begin to demonstrate consistent control over their behavior, and should be able to avoid behaviors that are unsafe or otherwise not good for them. *Id*. The regulations list several examples of symptoms which may indicate that a school-age child is marked in this domain. *See* 20 C.F.R. § 416.926a(k)(3). These examples include engaging in self-injurious behavior, such as refusal to take medication or ignoring safety rules, as well as failure to spontaneously pursue enjoyable activities or interests. *Id*.

6

The medical records here show that Q.Q.T. suffered limitations in the domain of caring for himself. During a visit to Hodge Pediatrics on August 23, 2017, plaintiff reported that Q.Q.T. was "very hyperactive, has a low temper, and is all around really hyper." (Tr. 236) She also noted that Q.Q.T. was having behavioral issues at school and would throw items when upset. (*Id.*) During another visit to Hodge Pediatrics on January 30, 2018, plaintiff reported that Q.Q.T. was very defiant and did not listen to authority, including his parents and teachers. (Tr. 279) Plaintiff indicated that Q.Q.T. fought constantly with his brother and recently tried to burn the house down. (*Id.*) Plaintiff explained that these symptoms persisted despite treatment with medication, specifically Adderall. (*Id.*) Notes from this visit stated that "Vanderbilt scores from teacher show signs of combined hyperactivity and inattentive ADHD as well as ODD, conduct disorder and anxiety/depression." (Tr. 280) Q.Q.T. was diagnosed with ADHD and mild oppositional defiant disorder and was referred to counseling. (*Id.*)

Treatment notes from a visit to Niagara Pediatrics on March 16, 2018 show that Q.Q.T. had been on ADHD medication for six weeks but that his teacher reported no improvement in his symptoms. (Tr. 379) Plaintiff requested a medication change. (*Id.*) Plaintiff and Q.Q.T. presented at Niagara Pediatrics on April 19, 2018 and plaintiff reported that Q.Q.T.'s current Adderall dose was not effective in treating his symptoms. (Tr. 350) Q.Q.T. was prescribed Adderall XR 15 mg. (Tr. 351) During a visit with Niagara Pediatrics on October 9, 2018, Q.Q.T.'s father reported that Q.Q.T. had not taken his Adderall for two months because the prescription had run out. (Tr. 326) Q.Q.T. was prescribed a refill. (*Id.*) Q.Q.T presented at Niagara Pediatrics for an ADHD check-up on April 3, 2019. (Tr. 301) His ADHD medication was increased with the goal of improving

schoolwork. (Tr. 302) The treating physician also cited a goal of improving socialization and safety. (*Id.*) Treatment records from Niagara Pediatrics dated May 6, 2019 indicate that Q.Q.T. presented for a medication check and plaintiff reported that Q.Q.T was not doing well in the afternoons, when his medication appeared to wear off. (Tr. 401) Q.Q.T.'s dose of ADHD medication was increased. (*Id.*)

Likewise, Q.Q.T.'s educational records reflect significant difficulties in this domain, specifically with regard to Q.Q.T.'s ability to regulate his emotions and demonstrate consistent, acceptable behavior. An Aloma D. Johnson Charter School ("ADJ") Office Discipline Referral Form dated January 3, 2019 indicated that Q.Q.T. was disruptive, disrespectful, and insubordinate. (Tr. 206) An ADJ Office Discipline Referral Form dated January 8, 2019 indicated that Q.Q.T. caused a major disruption and was defiant, and as a result was assigned lunch detention. (Tr. 205) An ADJ Office Discipline Referral Form dated January 23, 2019 indicated that Q.Q.T. had behavior problems including being disruptive, property misuse, and insubordination. (Tr. 204) He was disciplined with lunch detention and time in the office. (*Id.*) On January 28, 2019, Q.Q.T. was suspended for one day because he was "very defiant in class, refused to follow classroom rules, and was disrespectful to his teacher." (Tr. 202) An ADJ Office Discipline Referral Form dated February 5, 2019 indicated that Q.Q.T. had behavioral problems including being disruptive, insubordination, and inappropriate physical contact. (Tr. 203) Moreover, Q.Q.T. was suspended from school from February 12, 2019 through February 13, 2019 because he was "pushing students, not following classroom rules, and calling students inappropriate names." (Tr. 201) Q.Q.T. was suspended from school effective March 11, 2019 to March 12, 2019 because he was "running around the room and was

uncontrollable." (Tr. 200) Q.Q.T. was suspended from school effective March 29, 2019 through April 1, 2019 because he was "out of control in class, throwing pencils, and being very disruptive." (Tr. 199)

The ALJ's decision leaves the Court with little guidance as to how the ALJ decided on a less than marked limitation for the domain of Q.Q.T.'s ability to care for himself with regard to regulating his emotions and appropriately controlling his behavior. In analyzing this domain, the ALJ stated only that "while…the record shows a history of suspensions and disciplinary actions in 2019, given the extensive history of parental non-compliance in this case, I cannot disregard the possibility that these acting out behaviors occurred in the setting of non-compliance with medication." (Tr. 22) Thus, the ALJ seemed to dismiss any problems in this domain based solely on parental failure to ensure that Q.Q.T. took his prescribed ADHD medication. However, the medical records discussed above seem to reflect only a two-month period of time, from early August of 2018 to early October of 2018, when Q.Q.T. was not taking his medication because his father failed to refill his prescription. Q.Q.T.'s ADHD prescription was refilled in early October of 2018. Medical records subsequent to that date, and throughout 2019, seem to reflect that Q.Q.T. was again taking his prescribed medication after this brief period of noncompliance. Nonetheless, educational records show that Q.Q.T. experienced significant behavioral problems in school between January 2019 and April of 2019, even though Q.Q.T. appears to have been again taking his ADHD medication during that time. Moreover, plaintiff reported to treatment providers, at various times during the relevant period, that Q.Q.T. continued to experience behavioral difficulties in spite of his prescribed ADHD medication.

Thus, contrary to the ALJ's reasoning, it is not apparent that Q.Q.T.'s "acting out behaviors occurred in the setting of non-compliance with medication."[4]

Other than parental failure to ensure medication compliance, which this Court does not find to be a valid basis for dismissing Q.Q.T.'s difficulties in caring for himself, the ALJ does not provide a clear explanation as to what medical or educational evidence he relied on in making his determination. Indeed, the ALJ does not specifically weigh or account for any of the evidence of limitation in the record when evaluating Q.Q.T.'s ability to care for himself. *See Woodall v. Colvin*, 5:12-CV-1818, 2013 U.S. Dist. LEXIS 1237444 (N.D. Ohio Aug. 12, 2013) (remanding ALJ's decision because the ALJ did not delve into the claimant's ability to control himself and cope with stress and changes in his environment, his engaging in self-soothing activities, and the claimant's ability to meet his physical and emotional needs); *Benjamin v. Berryhill*, 3:17-CV-158, 2018 U.S. Dist. LEXIS 97114 (D. Conn. June 8, 2018) (remanding where ALJ failed to consider evidence relevant to the domain of caring for oneself, including evidence of temper tantrums and "meltdowns" and whether child claimant could "manage the demands of her environment at an age appropriate level"); *R.W. v. Comm'r of Soc. Sec.*, 1:14-CV-0642, 2015 U.S. Dist. LEXIS 118103 (N.D.N.Y. Sept. 4, 2015) (remand appropriate where ALJ failed to discuss opinion

---

[4] Even if the record here supported the ALJ's claim that plaintiff's "acting out behaviors" were the consequence of non-compliance with medication, the Court still would not find this to be a valid reason, in itself, for the ALJ to assess less than marked limitations in this domain. "[W]hether or not a parent forces a child to take medication or attend other treatment provides very little evidence about that child's ability to independently seek and comply with treatment as part of good judgment regarding self-care, and that independent ability is what is at issue when rating whether a child claimant is limited in caring for himself." *Navarro v. Comm'r of Soc. Sec.*, 16-CV-1190, 2017 U.S. Dist. LEXIS 167206 (N.D.N.Y. Oct. 10, 2017). *See also Newman v. Bowen*, 88-2209, 1989 U.S. App. LEXIS 21789 (4th Cir. Sept. 8, 1989) ("We doubt that the SSA regulations contemplate denying benefits to a minor because of his parents' noncompliance with doctors' recommendations.")

10

evidence suggesting that child claimant had limitations in the domain of caring for himself); *Agee v. Astrue*, 1:12-CV-0657, 2013 U.S. Dist. LEXIS 172350 (W.D.N.Y. Dec. 6, 2013) (remanding where it was "[u]nclear…whether the ALJ considered some of the self-injurious behavior that [claimant] exhibited or the teachers who stated that [claimant] had serious problems controlling his emotional state.").

In sum, because medication non-compliance appears to be the only reason cited by the ALJ in support of her finding of less than marked limitation in the domain of caring for himself, the Court cannot conclude that the ALJ's assessment was supported by substantial evidence. To be sure, there may be an appropriate basis to discount the evidence of Q.Q.T.'s substantial limitation in this domain in favor of other evidence supporting a less than marked limitation. However, in the absence of any explanation supported by the record leading to that conclusion, the matter should be remanded to provide the ALJ another opportunity to assess the record and explain her reasoning. If necessary, the ALJ should supplement the record to better address Q.Q.T.'s functioning in this domain. *Navarro v. Comm'r of Soc. Sec.*, 1:16-CV-1190, 2017 U.S. Dist. LEXIS 167206 (N.D.N.Y. Oct. 10, 2017) ("[T]his Court cannot say that the evidence in the record as a whole definitively and clearly supports at least a marked limitation, but the ALJ failed to provide the requisite explanation to enable review of whether his finding in the domain of caring for self was supported by substantial evidence."); *Agee*, 2013 U.S. Dist. LEXIS 172350, *22 (remanding where the ALJ's decision "has left the Court with no guidance as to how the ALJ decided on a less than marked limitation" in the domain of caring for self).

Plaintiff also argues that the ALJ's assessment of the domain of attending and completing tasks was not supported by substantial evidence. (*See* Dkt. No. 7-1 (Plaintiff's

11

Memo. of Law)) "[B]ecause the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to address this issue." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 472 (W.D.N.Y. 2018). *See also Rodriguez v. Saul*, 18-CV-01401, 2020 U.S. Dist. LEXIS 159138 (W.D.N.Y. Sept. 1, 2020) ("Since remand is required, the Court need not address the other arguments advanced by Plaintiff in support of his motion for judgment on the pleadings."); *Pinkerton v. Saul*, 19-CV-6211, 2020 U.S. Dist. LEXIS 139726 (W.D.N.Y. Aug. 5, 2020) (declining to address other arguments advanced by plaintiff after finding that remand was necessary for the Commissioner to provide "good reasons" for assessment of medical opinion). On remand, the Commissioner shall reassess Q.Q.T.'s ability to attend and complete tasks in light of the record as a whole, and together with any supplemental evidence the Commissioner may decide to obtain in light of the Court's determination above.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 7), defendant's motion for judgment on the pleadings is denied (Dkt. No. 9), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

Dated:   November 8, 2022
         Buffalo, New York

                                                        _____
                                                        MICHAEL J. ROEMER
                                                        United States Magistrate Judge